## WHITEHOUSE *vs.* LANGDON.

A contractor for carrying the mail is not an officer of the government, nor is the employment an office.

The plaintiff, a contractor for carrying the mail upon a certain route, executed an indenture with the defendant, who was desirous of taking the contract and being substituted as a contractor, by which he covenanted to surrender his privilege and right, and to aid and assist the defendant in every reasonable way, by signing proper and fit letters, acquittances and discharges, to effectuate the transfer; and further covenanted, that in the event the post-master-general would not accept the defendant as mail contractor, he would pay the defendant the sums he might receive of the post-office department, deducting $125 quarterly, and also all fines and abatements made by the post-master-general. And the defendant covenanted that he would carry the mail according to the proposals, and pay the plaintiff $125, quarterly; and until he should be accepted as a substitute, would indemnify and save the plaintiff harmless from the proposals made by the plaintiff, and from all costs, damage and expenses resulting from any non-performance, or fines incurred

therefor. The defendant was substituted, as a contractor, by the consent of the post-office department. In an action to recover one of the quarterly payments, to be made by the defendant—*Held*, that the covenant was legal, and that the plaintiff was entitled to recover.

COVENANT, upon an indenture, dated June 30, 1837, reciting that whereas the plaintiff had made a proposal to the general post-office department, at Washington, for carrying the United States mail, upon a certain route, at the yearly compensation of $1200, which proposal had been accepted by the post-master-general, subject to the terms and conditions stated in the post-office department's advertisement for proposals; the service to commence on the first day of July, then next, and to continue to the 30th day of June, A. D. 1841, inclusive; and whereas the defendant was desirous of purchasing the privilege of the plaintiff, and, if the post-master-general would consent, of substituting himself in the place of the plaintiff, as carrier of the mail aforesaid; the plaintiff, in consideration of the covenants and agreements of the defendant, covenanted and agreed to and with the defendant, to surrender his privilege and right to him, and to aid and assist him in every reasonable way, by signing proper and fit letters, acquittances and discharges, to effectuate the same. And the defendant, on his part, in consideration of the covenants and agreements of the plaintiff, covenanted and agreed that he would carry the mail according to the proposals, and annually, on the first day of July, commencing the first day of July, A. D. 1838, would pay to the plaintiff the sum of $125, making in all the sum of $500; and until the defendant should be accepted as a substitute for the plaintiff, that he would indemnify and save the plaintiff harmless from the proposals so made by the plaintiff, and from all cost, damage and expenses resulting from any non-performance, or deficiency, or fines, in any way to arise or be incurred therefor. And the plaintiff also agreed, in the event the post-master-general would not accept the defendant as mail contractor, that he would pay the defendant in quarterly payments, or on receipt of the quarterly pay-

ments from the post-office, for the services aforesaid, the full sum or sums he might receive of the post-office, so long as the defendant should comply with his agreements, deducting therefrom the amount of $125, annually, and also all fines or abatements made by the post-master-general, in the said service, quarterly, as aforesaid.

The defendant was substituted as a contractor, and the action was brought to recover the sum of $125, due on the first day of July, 1838, by the terms of the indenture.

The defendant objected that the indenture was against public policy, and without consideration, and that no action could be sustained upon it.

It appeared from the testimony of S. R. Hobbie, Esq., first assistant post-master general, that by the custom of the post-office department, on a written application of a contractor, and the written assent of the other party, the post-master general will give an order authorizing a transfer of a contract for carrying the mail, from the contractor to the other party, provided he is satisfied of the responsibility and fitness of the latter for the service. This order is granted upon condition that the transferee shall enter into contract with sufficient sureties. When this contract is executed, it supersedes the original contract, but there is no surrender of the indentures from the files. This has been the practice since the month of July, 1836, and it has prevailed as far back as the deponent had knowledge of the business of the department, but with less strictness in regard to taking an order of the post-master general, and requiring a new contract to be executed by the transferee. The filing of the application of the parties, and entry thereof in the margin of the original contract, and in the pay books, has been deemed sufficient.

It was agreed that if the court should be of opinion that the objections of the defendant were insufficient, judgment should be rendered for the plaintiff for a certain sum ; but if the objections were sustained, judgment to be entered for the defendant.

*Bartlett & Norris*, for the defendant. 1. The contract is void by the statute 5 & 6 Edward vi. ch. 16, which is part of our common law. The revenues of the post-office are concerned in the carriage of the mail. The appointment to carry it is an office. It is a place of trust connected with the revenue. 2 *Salk.* 468, *Godolphin* vs. *Tudor ; Willes R.* 571, *Laying* vs. *Paine ;* 3 *Kent's Com.* 454–458 ; 1 *H. Black. R.* 327, *Garforth* vs. *Fearon ; Ditto* 322, *Parsons* vs. *Thompson ;* 8 *D. & E.* 89, *Blackford* vs. *Preston ;* 2 *B. & Cres.* 661, *Card* vs. *Hope ;* 2 *Dane's Dig.* 354 ; 7 *Ves. Jr.* 470, *Thompson* vs. *Thompson ;* 1 *H. Black.* 627, *Barwick* vs. *Reade ;* 3 *D. & E.* 681, *Flarty* vs. *Odlum ;* 2 *B. & B.* 673, *Palmer* vs. *Bate ;* 3 *P. Wms.* 391, *Law* vs. *Law ;* 4 *Ves. Jr.* 811, *Hartwell* vs. *Hartwell ;* 18 *Ves.* 379, *Osborne* vs. *Williams ; Willes* 241, *Huggins* vs. *Bambridge.*

2. The contract in this case is void, as against public policy. 4 *B. & Cres.* 319, *Waldo* vs. *Martin ;* 5 *N. H. Rep.* 196, *Carleton* vs. *Whitcher.* Here is a covenant on the part of Whitehouse that Langdon shall be employed, whether the department assents or not. The regulations require that no one should be employed without consent.

3. It is void, because the consideration of the promise, on the part of Langdon, is, that Whitehouse should recommend him for the appointment. He promises to sign all papers.

4. It is void, also, as a promise to indemnify Whitehouse for any violations of the law, or obligations in relation to the conveyance of the mail. He will indemnify him from what he is bound to do in carrying the mail—for a violation of his duty.

5. It is void, furthermore, as an agreement to substitute Langdon as a mail carrier, without the consent, and against the consent of the post-master-general. This indenture states that if the department will not agree to substitute him, he shall still go on and carry the mail.

*C. W. Woodman,* (with whom was *Hale*) for the plaintiff.

No benefit resulted to the post-master-general from this contract. Nothing was concealed from him. It was in accordance with the custom of the office. No injury could arise to the government, for the defendant's bonds were security for every deficiency. How, then, is it against the policy of the law regulating the transportation of the mail? The plaintiff's contract being to execute and perform certain business for the government, at a fixed rate, is like that of every other contractor, as a contract to build a light-house, or fort, or to supply government with military stores, blankets, &c. And if the contractor is debarred from letting out the whole job at once, (for the plaintiff's contract is nothing more than that,) why should he not be forbidden to let it out to two, three, or more sub-contractors, and be compelled to cause all the work to be performed by what is usually termed day labor. If it be against public policy for one man to take the contract from the plaintiff, it certainly would be for five men. In the case at bar, the sub-contract was made with the knowledge and assent of the government.

The plaintiff's agreement with the post-master-general is recognized by the laws, as a contract, and the damages for not entering into satisfactory obligation, according to the proposals, after the same have been accepted, are the difference between such proposals, and what the post-master general shall have to pay for the same transportation.

There is a difference between an office, and employment. There are employments which are not offices; as, agreements to make hay, plough land, herd a flock, &c., which differ widely from steward of a manor. *Bac. Abr., Offices and Officers, A.* The plaintiff was not an officer of the government, but was employed to do certain specified ministerial acts. He is not a collector of the revenue, and does not, therefore, come under the statute of 5 & 6 Edward vi. No money passes through his hands.

It is believed, that in nearly all the instances cited by the counsel for the defendant, of contracts in any degree anala-

gous to this, which have been pronounced void, the contract was executed without the knowledge of the appointing power ; and upon that circumstance rested the decision of the court.

PARKER, C. J.   Upon the facts disclosed in this case, the plaintiff was not appointed to any office, by his agreement with the post-office department to carry the mails, on the route specified in the indenture ; nor did he receive any appointment to an office, in consequence of that agreement. His undertaking to carry the mail was a contract.   The 10th sec. of the act of Congress, passed March 3, 1825, authorizes the post-master general to advertise, and to make contracts.   The plaintiff was by agreement bound to perform certain stipulated services for the department, in transporting the mail from place to place, for a certain compensation to be paid to him.

This being the character of the service to be rendered, there is nothing against public policy in his employing others to assist in performing that service, or to perform it in his behalf.   It could not have been in contemplation of the department, or of the plaintiff, that the whole service was to be performed by him, personally.   The 7th sec. of the act contemplates that the service may be performed by others than the contractors.   It provides that mail-carriers shall be free white persons, and that any contractor who shall employ, or permit, any other than a free white person to convey the mail, shall incur a penalty.

Nor is there any thing illegal in the covenant by the plaintiff that he would aid and assist in having the contract transferred to the defendant, in every reasonable way, by signing proper and fit letters, acquittances and discharges for the purpose.   There is no evidence that this part of the agreement bound the plaintiff to do any thing which might not lawfully be done, or that any improper recommendations were within the contemplation of either party.   A practice to trans-

fer contracts, from one to another, appears to be recognized by the department.

The substance of the contract, on the part of the plaintiff, is, that he would endeavor to have the defendant substituted as a contractor for that route, in his stead, and yield up the contract to him, if the department would consent to receive the defendant as a contractor ; and in case the department would not consent to the substitution, then that the defendant should carry the mail as if he was a sub-contractor, and be entitled to receive the amount of the compensation, deducting the sum agreed upon ; the defendant stipulating to perform the service, and to indemnify the plaintiff, (who would in that case remain responsible to the department) against any default.   There is in this nothing to show that the plaintiff was taking the defendant's covenant, to indemnify him for the commission of any illegal act, or that he intended to substitute the defendant as a mail-carrier, against the consent of the department.   The department might prefer to retain the contract of the plaintiff, and yet have no objection that the service should be performed by the defendant, the plaintiff being responsible that there should be no failure.

And the plaintiff, in agreeing to permit the defendant to carry the mail as if he was a contractor, in case no substitution was made, might well take the covenant of the defendant to indemnify him from any default, because he would remain answerable to the department for those defaults.

If it is supposed that there is any abuse in obtaining and disposing of these contracts, it is for congress to apply the remedy.

*Judgment for the plaintiff.*